IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| YOSIF WEDAD YONIS, | ) | CASE NO. 23-10462-cgb |
| | ) | |
| *Debtor.* | ) | |
| | ) | |
| XL FUNDING, LLC, D/B/A | ) | |
| AXLE FUNDING LLC | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | Adv. Pro. No. _____ |
| YOSIF WEDAD YONIS | ) | |
| | ) | |
| | ) | |
| *Defendant.* | ) | |

### COMPLAINT TO DETERMINE DISCHARGEABILITY OF A DEBT PURSUANT TO 11 U.S.C. §§523(a)(2)(A), 523(a)(4), and 523(a)(6)

The plaintiff in this action, XL Funding, LLC d/b/a Axle Funding LLC ("XLF"), by counsel, pursuant to the provisions of 11 U.S.C. §§ 523(a)(2)(A); 523(a)(4), 523(a)(6); and Rules 4007 and 7001 of the Federal Rules of Bankruptcy Procedure, requests that the Court determine certain obligations of Yosif Wedad Yonis ("Debtor" or "Yonis") to XLF to be nondischargeable. In support of its Complaint, XLF states as follows:

### I. PARTIES

1. On June 29, 2023 (the "Petition Date"), Debtor filed in the Western District of Texas, Austin Division, a Petition for relief under Chapter 7 of the United States Bankruptcy Code, thereby creating Case No. 23-10462-cgb.

2. Debtor listed his address in a written filing with this Court to be 3316 Burch Brook

Cove, Pflugerville, Texas 78660.

3. Debtor was represented in the filing of his Petition for Relief by Nicholas Inman, whose business mailing address is 860 Airport Fwy, Ste 401, Hurst, Texas 76054.

4. XLF is an Indiana limited liability company and is a creditor of Debtor in the underlying bankruptcy case.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

6. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

7. Venue is proper under 28 U.S.C. § 1409(a).

8. The deadline to file a complaint to determine dischargeability of debts in this bankruptcy case is October 2, 2023. Therefore, XLF's complaint is timely filed.

## III. FACTUAL ALLEGATIONS

### A. THE DEMAND PROMISSORY NOTE AND SECURITY AGREEMENT

9. At all times relevant herein, Debtor was the sole owner of a used car dealership known as Wedad Cars LLC doing business as Yosif's Auto Repair (the "Dealer") and located at 2127 W. Parmer Lane, Austin, Texas 78727.

10. On or about April 9, 2021, Dealer and XLF entered into a Demand Promissory Note and Security Agreement (the "Note"). A true and accurate copy of the Note is attached hereto and incorporated herein as Exhibit A.

11. At all times relevant herein, Debtor controlled and was directly involved in the day-to-day business operations of Dealer until Dealer ceased operations.

12. Under the terms of the Note, XLF granted Dealer a line of credit for the purpose of purchasing inventory for Dealer's used car lot.

13. Under § 2.3(e) the Note, Dealer and Debtor were obligated to hold in trust any and all sales proceeds from the disposition of any Lender-Financed Inventory (as defined in the Note) for repayment to XLF as follows:

> The Dealer shall pay all Obligations to XLF at the offices of XLF, on demand and without notice, with respect to Lender-Financed Inventory on the earliest of: (i) twenty-four (24) hours from the time the Dealer receives payment by or on behalf of the purchaser of an item of Lender-Financed Inventory; (ii) forty-eight (48) hours after the disposition by sale, lease, rent to own, lease to own or otherwise of an item of Lender-Financed Inventory; (iii) the Maturity Date or (iv) upon demand by XLF.[1]

14. Pursuant to § 3 of the Note, Dealer granted to XLF a security interest in all of Dealer's collateral, including all Accounts, Deposit Accounts, General Intangibles, Documents, Instruments, Investment Property, Chattel Paper (including without limitation letters of credit, documents of title, books and records), Inventory (as defined in the Note), whether now existing or acquired and wherever located, Purchase Money Inventory, and all additions, accessions, accessories, replacements, and Proceeds, together with any and all books and records.[2]

15. XLF's security interest in the Collateral is perfected by virtue of a UCC-1 Financing Statement (the "Financing Statement") filed by XLF with the Texas Secretary of State on or about April 9, 2021. A true and accurate copy of the Financing Statement and all addenda thereto is attached hereto and incorporated herein as <u>Exhibit B</u>.

16. As a condition of extending credit to Dealer, XLF required Debtor to execute an Unlimited and Continuing Guaranty (collectively, the "Guaranty") in favor of XLF, whereby Debtor guaranteed prompt and full payment to XLF of all obligations of Dealer pursuant to the

---

[1] *See* Exhibit A, § 2.3(e).
[2] All capitalized terms are defined in § 12 of the Note.

Note. True and correct copies of the Guaranty are collectively attached hereto and incorporated herein as Exhibit C.

### B. XLF VEHICLES SOLD OUT OF TRUST AND MISSING VEHICLE

17. Between June 6, 2022 and October 20, 2022, XLF advanced funds to Dealer and to certain third parties on Dealer's behalf, at Debtor's request, for the purchase of vehicles for retail inventory as Collateral pursuant to the terms of the Note.

18. The funds advanced by XLF to Dealer and on Dealer's behalf were not repaid as agreed, and XLF declared the Note to be in default on or about April 10, 2023.

19. XLF has not recovered four (4) of the vehicles which had outstanding balances as of July 6, 2023, and there are no vehicles remaining in Dealer's inventory. A list of the four (4) missing vehicles (the "SOT Vehicles"), including each vehicle's year, make, model, date floor planned with XLF, and the principal balance remaining on each vehicle, is seen below, and attached hereto and incorporated herein as Exhibit D.

| Stock Number | VIN | Make | Model | Year | Principal Amount Remaining |
|---|---|---|---|---|---|
| 17620.143 | 439886 | Toyota | Sienna | 2014 | $11,493.00 |
| 17620.138 | 209486 | Hyundai | Sonata | 2011 | $2,866.50 |
| 17620.145 | 306544 | Cadillac | Escalade | 2015 | $17,644.50 |
| 17620.162 | 199224 | Mercedes | C-Class | 2017 | $19,700.00 |
| **Total** | | | | | **$51,704.00** |

20. Upon information and belief, Dealer and Debtor sold all four (4) of the SOT Vehicles.

21. Debtor was aware that proceeds from the sale of the SOT Vehicles were required to be held in trust and paid to XLF.

22. Upon information and belief, Dealer and Debtor have received full payment from the consumers who purchased the SOT Vehicles, or, in the alternative, never received funds from the sale or disposition of the SOT Vehicles, resulting in XLF being deprived of the Sales Proceeds from a legitimate sale. Instead, Dealer and Debtor embezzled the funds from the sale or other disposition of the SOT Vehicles by misapplying the funds or failing to pay the funds to XLF pursuant to the terms of the Note.

23. Upon information and belief, Dealer and Debtor used the funds received from customers who purchased the SOT Vehicles to pay the Debtor.

24. Neither Dealer nor Debtor has paid the principal balances remaining on the SOT Vehicles to XLF.

25. Under the Note, XLF also advanced funds for a certain vehicle, Stk. # 17620.127 (the "Missing Vehicle"). The make, model, color, and VIN of the Missing Vehicle is included in Exhibit D.

26. XLF floored the Missing Vehicle for $25,000.00.

27. Dealer and Debtor owe XLF the principal amount of $19,427.17 for the Missing Vehicle.

28. The Missing Vehicle was never recovered by XLF.

29. Debtor knew it was a violation of the Note to keep the Missing Vehicle, use the same for personal use, and/or otherwise dispose of it without paying XLF.

30. Upon information and belief, Debtor currently has possession of the missing Vehicle and never paid XLF the principal amount owed for the Missing Vehicle under the Note.

31. Upon information and belief, Debtor used the vehicle and/or sales proceeds from the Missing Vehicle for their own use and benefit and to XLF's detriment, or, in the alternative, sold the Missing Vehicle to consumers and received full payment from the consumers who purchased the Missing Vehicle, effectively converting the Missing Vehicle.

## IV. BASIS FOR RELIEF

32. At the time of the Advances, Dealer and Debtor made representations or omissions of material fact to XLF regarding the financial condition of the Dealer and Debtor, as well as their ability to repay the Advances, with the intention and purpose of deceiving XLF.

33. XLF relied upon the representations or omissions of material fact made by Dealer and Debtor in making the Advances.

34. XLF's reliance on the representations or omissions of material fact made by Dealer and Debtor to XLF set forth above are reasonable and justified.

35. As a proximate result, XLF has, due to Dealer's Debtor's representations and omissions of material fact, sustained loss and has been damaged.

36. As of the Petition Date, the remaining principal balance owed on the SOT Vehicles is Fifty-One Thousand, Seven-Hundred and Four and 00/100 Dollars ($51,704.00).

37. As of the Petition Date, the remaining principal balance owed on the Missing Vehicle is Nineteen Thousand, Four-Hundred and Twenty-Seven and 17/100 Dollars ($19,427.17).

38. As of the Petition Date, the remaining principal balance owed on the SOT Vehicles and the Missing Vehicle totals Seventy-one Thousand, Six-Hundred and Twenty-Five and 50/100 Dollars ($71,625.50).

39. Pursuant to Section 2.3(e) of the Note (the "Trust Provisions"), all amounts received from the sales of any item of Lender-Financed Inventory ("Sale Proceeds") were required to be held in trust for the sole benefit of XLF and were to be remitted promptly to XLF within twenty-four (24) hours of Dealer's receipt of the Sales Proceeds.

40. The Trust Provisions of the Note created an express trust for the benefit of XLF, with a clearly identifiable trust res comprised of Sale Proceeds.

41. Debtor actively participated in the day-to-day operations of Dealer, including sales, inventory control, accounts receivable, and accounts payable.

42. Debtor was the sole individual at Dealer who had the ability to comply with the Trust Provisions of the Note, or to breach the Trust Provisions by failing to hold Sale Proceeds in trust for XLF.

43. Debtor therefore stood in a fiduciary relationship to XLF.

44. Debtor was aware of the terms of Dealer's secured line of credit with XLF, as those terms were spelled out in the Note, which Debtor executed in his capacity as owner of the Dealer.

45. Debtor had a fiduciary duty to hold the Sale Proceeds in trust for the benefit of XLF and to remit the Sale Proceeds to XLF within twenty-four (24) hours of receipt.

46. Debtor breached his fiduciary duty by intentionally failing to deliver the Sale Proceeds of the SOT Vehicles to XLF, as well as the Missing Vehicle, to XLF, instead converting those Sale Proceeds and the Missing Vehicle for other purposes.

47. Debtor intended to harm XLF by selling, transferring, ill-treating, wasting, or otherwise disposing of the SOT Vehicles and the Missing Vehicles and not paying the Sales Proceeds to XLF.

48. The sale, transfer, ill-treating, wasting, or other disposition of the SOT Vehicles and Missing Vehicle was a wrongful act committed by Debtor and Dealer which Debtor and Dealer knew, or believe, would substantially injure XLF should the SOT Vehicles be sold, transferred, or otherwise disposed of without paying XLF.

49. The sale, transfer, ill-treating, wasting, or other disposition of the SOT Vehicles and the Missing Vehicle and subsequent failure to pay XLF the Sales Proceeds was done by Dealer and Debtor intentionally.

50. The sale, transfer, ill-treating, wasting, or other disposition of the SOT Vehicles and the Missing Vehicle and subsequent failure to pay XLF the Sales Proceeds necessarily caused injury to XLF.

51. The sale, transfer, ill-treating, wasting, or other disposition of the SOT Vehicles and the Missing Vehicle and subsequent failure to pay XLF the Sales Proceeds was done by Dealer and Debtor without just cause or excuse.

52. Dealer and Debtor's wrongful withholding of the Missing Vehicle as well as the wrongful withholding of the Sales Proceeds from the sale of the SOT Vehicles constitutes embezzlement.

53. Dealer and Debtor's conversion of the Sales Proceeds from the sale of the SOT Vehicles and conversion of the Missing Vehicle constitutes embezzlement.

54. Dealer and Debtor, if he they were not paid or not paid in full for the sale or other disposition of the SOT Vehicles, have converted the SOT Vehicles in an effort to defraud XLF from its collateral in the form of the SOT Vehicles or the Sales Proceeds thereof. Similarly, Debtor converted the Missing Vehicle in an effort to defraud XLF from its collateral in the form of the Missing Vehicle.

55. At all times relevant herein, Debtor controlled the day-to-day business operations of Dealer.

56. XLF held a valid and perfected security interest in the Missing Vehicle, the SOT Vehicles, and any Sale Proceeds therefrom.

57. At the time Debtor received the Sale Proceeds from the SOT Vehicles, Debtor knew that Dealer was in financial distress.

58. Debtor controlled the finances of Dealer and had ultimate authority and responsibility for issuing payments to Dealer's creditors.

59. Debtor solely, willfully and intentionally determined how the Sale Proceeds from the SOT Vehicles, and the Missing Vehicle, would be used.

60. Debtor failed to pay the Sale Proceeds from the SOT Vehicles to XLF and failed to pay the amounts due under the Note for the Missing Vehicle.

61. Debtor's failure to pay the Sale Proceeds to XLF was deliberate.

62. Debtor knew or should have known that his failure to pay the amounts due under the Note for the Missing Vehicle and Sale Proceeds to XLF was substantial certain to cause harm to XLF, as Debtor had no alternative source to repay XLF for the converted Missing Vehicle and Sale Proceeds.

63. Debtor knew or should have known that his failure to pay the amounts due under the Note for the Missing Vehicle and Sale Proceeds to XLF was contract to commonly accepted duties in the ordinary relationships among floor plan financers and floor plan borrowers.

64. Debtor, through the conduct described above, willfully and maliciously injured XLF, resulting in actual damages to XLF of not less than Seventy-One Thousand, One-Hundred

and Thirty-One and 17/100 Dollars ($71,131.17), exclusive of the interest and fees XLF could have earned on that amount had it been lent to a different dealer.

65. Pursuant to the Note, XLF is entitled to attorney's fees, costs, and expenses incurred in collecting and enforcing the obligations under the Note, including the fees and expenses incurred in this proceeding.

66. XLF has been required to hire an attorney to collect and enforce the obligations under the Note and to commence and pursue this proceeding.

67. XLF has incurred attorney's fees, costs, and expenses collecting and enforcing the obligations under the Note, including the fees and expenses incurred in this proceeding.

## COUNT I: 11 U.S.C § 523(a)(2)(A): FALSE PRETENSES, FALSE REPRESENTATIONS, OR ACTUAL FRAUD

68. XLF repeats, realleges, and incorporates by reference paragraphs 1-67 as if fully set forth herein.

69. The debt, including attorney's fees, costs, and expenses, arising from the money, property, and/or extension of credit Dealer and Debtor obtained from XLF by false pretenses, false representations, and/or actual fraud related to the SOT Vehicles is a nondischargeable debt of Debtor pursuant to 11 U.S.C. §523(a)(2)(A).

70. The debt including attorneys' fees, costs, and expenses, arising from the money, property, and/or extension of credit Dealer and Debtor obtained from XLF by false pretenses, false representations, and/or actual fraud related to the representations made by Dealer and Debtor in seeking funding under the Note and sale/conversion of the Missing Vehicle is a nondischargeable debt of Debtor pursuant to 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, XLF prays for (a) a determination that the debt, including attorney's fees, costs, and expenses, arising from the money, property, and/or extension of credit Dealer and

Debtor obtained from XLF by false pretenses, false representations, and/or actual fraud related to the SOT Vehicles and Missing Vehicle is nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A) and (b) for all other proper relief.

### COUNT II – 11 U.S.C. §523(A)(4): FRAUD OR DEFALCATION IN A FIDUCIARY CAPACITY, EMBEZZLEMENT, OR LARCENY

71. XLF repeats, realleges, and incorporates by reference all preceding paragraphs as if fully set forth herein.

72. The debt, including attorney's fees, costs, and expenses, rising from Debtor's fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny arising from Debtor's sale or other disposition of the SOT Vehicles without receiving or paying the Sales Proceeds to XLF as required by the Note is a nondischargeable debt of Debtor pursuant to 11 U.S.C. § 523(a)(4).

73. The debt, including attorney's fees, costs, and expenses, rising from Debtor's fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny arising from Debtor's failure to pay the amounts due under the Note for the Missing Vehicle to XLF is a nondischargeable debt of Debtor pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, XLF prays for (a) a determination that the debt, including attorney's fees, costs, and expenses, arising from Debtor's failure to pay the Sales Proceeds realized from the sale or other disposition of the SOT Vehicles is a nondischargeable debt of Debtor pursuant to 11 U.S.C. § 523 (a)(4);(b) a determination that the debt, including attorney's fees, costs, and expenses, arising from the Debtor's failure to pay the amounts due under the Note for the Missing Vehicle to XLF is a nondischargeable debt of Debtor pursuant to 11 U.S.C. § 523(a)(4); (c) a determination that the debt, including attorney's fees, costs, and expenses, arising from the Debtor's sale or other disposition of the SOT Vehicles without paying the Sales Proceeds to XLF is a nondischargeable

debt of Debtor pursuant to 11 U.S.C. § 523(a)(4); and (d) all other proper relief.

### COUNT III – 11 U.S.C. § 523(A)(6): WILLFUL AND MALICIOUS INJURY

74. XLF repeats, realleges, and incorporates by reference the preceding allegations as if fully set forth herein.

75. The debt, including attorney's fees, costs, and expenses, arising from the willful and malicious injury to the Sales Proceeds and XLF's interest therein is a nondischargeable debt of Debtor pursuant to 11 U.S.C. § 523(a)(6).

76. The debt, including attorney's fees, costs, and expenses, arising from the willful and malicious injury to the SOT Vehicles, including the Missing Vehicle and XLF's interest therein is a nondischargeable debt of Debtor pursuant to 11 U.S.C. §523(a)(6).

WHEREFORE, XLF prays for (a) a determination that the debt, including attorney's fees, costs, and expenses, arising from the willful and malicious injury to the Sales Proceeds and XLF's interest therein is a nondischargeable debt of Debtor pursuant to 11 U.S.C. § 523(a)(6); (b) a determination that the debt, including attorney's fees, costs, and expenses, arising from the willful and malicious injury to the SOT Vehicles, including the Missing Vehicle and XLF's interest therein is a nondischargeable debt of Debtor pursuant to 11 U.S.C. §523(a)(6); and (c) for all other proper relief.

[*Remainder of this page intentionally left blank*]

**Respectfully Submitted,**

PADFIELD & STOUT, L.L.P.
420 Throckmorton Street, Suite 1210
Fort Worth, Texas 76102
817-338-1616 Phone
817-338-1610 Fax

/s/ Ivan Escobar
Alan B. Padfield
TX State Bar I.D. #00784712
abp@padfieldstout.com
Owen C. Babcock
State Bar I.D. #24104585
obabcock@padfieldstout.com
Ivan Escobar
TX State Bar I.D. #24125767
iescobar@padfieldstout.com

*Attorneys for XL Funding, LLC d/b/a XL Funding LLC*