

**UNLIMITED CONTINUING GUARANTY**

THIS UNLIMITED CONTINUING GUARANTY (this "Guaranty") is entered into effective as of 04/09/2021, from Yosif W. Yonis (the "Guarantor"), to XL FUNDING, LLC and its respective successors and assigns ("XLF"), an Indiana limited liability company, with its principal place of business at 10333 N. Meridian St., Suite 200, Indianapolis, IN 46290, in consideration of any present or future loans or other financial advances to Wedad Cars LLC dba Yosif's Auto Repair and its respective successors and assigns (the "Dealer").

**RECITALS**

A. On 04/09/2021, the Dealer executed and delivered to XLF the Dealer's principal Demand Promissory Note and Security Agreement ("Agreement"); and

B. The loan evidenced by the Agreement is conditioned upon the Obligations (as defined in the Agreement), the indebtedness and other liabilities of the Dealer being guaranteed as to the payment and performance of the Obligations, indebtedness and liabilities by the Guarantor; and

C. In consideration of the financial and other support that the Dealer has provided, and such financial and other support as the Dealer may in the future provide, to the Guarantor, and in order to induce XLF to provide credit to the Dealer, and because the Guarantor has determined that executing this Guaranty is in the Guarantor's interest and to the Guarantor's financial benefit, the Guarantor is willing to guarantee the payment and performance of the Obligations, indebtedness and liabilities of the Dealer under the Agreement; and

D. The Guaranty shall be irrevocable, continuing and unconditional as to all Obligations, indebtedness and liabilities owed by the Dealer at all times;

NOW, THEREFORE, in consideration of the premises and for valuable consideration, the receipt and sufficiency of which are acknowledged, the Guarantor agrees as follows.

The Guarantor, in executing this Guaranty, jointly and severally absolutely and unconditionally guarantees that the Dealer will promptly pay and perform all Obligations of the Dealer (as defined in the Agreement), the full amount of principal and interest, all costs and fees, including but not limited to, reasonable attorneys' fees and collection costs, and any other liabilities arising out of or in any way connected with the Agreement as and when the same shall in any manner be or become due, either according to the terms and conditions provided in the Agreement or upon acceleration of the payment of the Agreement by reason of a default, as a primary not a secondary liability of the Guarantor. Except as otherwise provided in paragraph 11 of this Guaranty, the liability of the Guarantor shall continue until payment and performance is made of every Obligation, indebtedness and liability of the Dealer now or hereafter incurred in connection with the Agreement and until payment is made of any loss or damage incurred by XLF with respect to any matter covered by this Guaranty.

The liability of the Guarantor under this Guaranty shall not be released, affected, stayed or impaired by any assignment, endorsement or transfer, in whole or in part, of the Obligations, indebtedness and liabilities or the Agreement, although made without notice to or consent of the Guarantor, or any waiver by XLF of the performance or observance by the Dealer or the Guarantor of any agreement, covenant, term or condition relating to the Obligations, liabilities or indebtedness. The Guarantor waives any right to require XLF to (a) proceed against the Dealer; (b) proceed against any other guarantor; (c) proceed against or exhaust any security held from the Dealer; or (d) pursue any other remedy in XLF's power whatsoever prior to demanding performance by the Guarantor under this Guaranty. The Guarantor waives notice of acceptance and any defense arising by reason of any disability or other defense of the Dealer or by reason of the cessation from any cause whatsoever of the liability of the Dealer. The Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation, or incurring of new or additional Obligations, indebtedness and liabilities. If any Obligations, liabilities or indebtedness of the Dealer are renewed, or if the time for payment be extended (to which the Guarantor expressly consents) either with or without notice to the Guarantor, the Guarantor unconditionally guarantees the payment and performance of such Obligations, liabilities and indebtedness at the time fixed for the payment or performance in and by any renewal or extension. The Guarantor waives all rights, by statute or otherwise, to require XLF to institute suit against the Dealer and to require XLF to exercise diligence in enforcing this or any other instrument.

The Guarantor waives notice of failure of any person to pay to XLF any debt held by XLF as collateral security for the obligations of the Dealer and all defenses, offsets and counterclaims which the Guarantor may at any time have to any claim of XLF against the Dealer.

The Guarantor agrees that, without affecting the Guarantor's liability, XLF may, without notice to or consent of the Guarantor and on terms XLF may deem advisable, extend in whole or in part, by renewal or otherwise, the time of payment of the Obligations, liabilities, and debt required to be performed or owing by the Dealer to XLF or held by XLF as security for any obligation described, or may do or refrain from doing any act. The Guarantor also agrees to XLF's release, surrender, exchange, modification, impairment or extension to the periods of duration or the time for performance or payment of any collateral securing the obligations of the Dealer to XLF, and may also settle or compromise any claim of XLF against the Dealer or against any other person or entity whose obligation is held by XLF as collateral security for any obligation of the Dealer or XLF. The Guarantor ratifies and affirms any

such actions, and all actions shall be binding upon the Guarantor.  The Guarantor waives all defenses, counterclaims or offsets which the Guarantor may have.

XLF may take any new or additional or substituted security from time to time without in any way impairing the obligation of the Guarantor. The impairment of the security, which XLF may hold as security, shall in no way operate to discharge the Guarantor in whole or in part, it being specifically agreed that XLF is not required to exercise diligence to enforce its rights against the Dealer. XLF is authorized at any time, in its sole discretion and without notice, to take, change, release or in any way deal with the security, but XLF shall be under no obligation to collect or to protect any security or indebtedness, and XLF's neglect or failure to collect or protect the same is excused by the Guarantor. Acceptance of this Guaranty is waived. Forbearance on the part of XLF to take steps to enforce payment of indebtedness arising from the Guarantor's default in any respect, or the giving of further time to the Dealer, shall in no way release the Guarantor, and the Guarantor shall remain jointly and severally liable for the prompt payment of the indebtedness.

This Guaranty is for the use and benefit of the original holder of the Agreement, who in the first instance will be XLF. This Guaranty shall also be for the use and benefit of any subsequent owner of the Agreement and each owner of the Agreement may assign this Guaranty to its successor owner of the Agreement.

All reasonable costs and expenses, including attorneys' fees, incurred by XLF to enforce this Guaranty, shall be paid by the Guarantor.

The Guarantor represents that, at the time of the execution and delivery of this Guaranty, nothing exists to impair the effectiveness of this Guaranty.

The Guarantor understands and acknowledges that, so long as any indebtedness exists from the Dealer to XLF, the Dealer is not permitted to repay any loans or obligation owing the Guarantor, present or future. The Guarantor agrees that any such payments made by the Dealer to the Guarantor shall be held in trust for the benefit of XLF and shall be immediately delivered to XLF.

XLF may, at its option, proceed in the first instance against the Guarantor to collect the Obligations, liabilities and indebtedness covered by this Guaranty without first proceeding against any other person or entity, and without resorting to any property held by XLF as collateral security.

At any time after the execution of this Guaranty, Guarantor may terminate this Guaranty by providing advance written notice to XLF: *provided that,* the outstanding balance of the Guarantor's liability as of the date of Guarantor's notice of termination of this Guaranty shall continue until payment and performance is made of every such Obligation, indebtedness and liability of the Dealer incurred in connection with the Agreement and until payment is made of any loss or damage incurred by XLF with respect to any matter covered by this Guaranty.

The validity, enforceability and interpretation of this Guaranty shall be governed by the laws of the State of Indiana without regard to conflicts of laws provisions thereof; and the Guarantor agrees that any and all claims or disputes pertaining to this Guaranty or to any matter arising out of or related to this Guaranty initiated by the Guarantor or the Dealer against XLF shall be brought in the state or federal courts of Marion County, Indiana. Further, the Guarantor expressly consents to such jurisdiction and venue of the state or federal courts in Marion County, Indiana as to any action brought in such court by XLF and waives any claim of inconvenient forum with respect to any such action.

This Guaranty shall be governed by and interpreted under the laws of the State of Indiana.

The Guarantor understands that the right to trial by jury is an unconditional right afforded by the United States Constitution and understands that right may be waived. The Guarantor has consulted with or has had the opportunity to consult with the Guarantor's attorney and knowingly, intentionally and voluntarily waives any right to trial by jury regarding any litigation arising out of or in connection with this Guaranty. The Guarantor understands that XLF also has waived its right to trial by jury and agrees that such waiver by the Guarantor and XLF are for the mutual benefit of the parties.  Further, the Guarantor understands and agrees that such waiver is a material inducement for both parties in entering into this Guaranty and transactions relating thereto.

Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid or unenforceable under such law, such provision shall be ineffective to the extent of such prohibition, invalidity, or unenforceability without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

Words of "Guaranty" contained in this Guaranty in no way diminish or impair the absolute liability created by this Guaranty.

This Guaranty is intended by the Guarantor as an amendment and restatement of any prior guaranty made by the Guarantor related to the Agreement or amendment thereof executed by the Dealer.

The Guarantor acknowledges and agrees that XLF may report information about the Guarantor's account to credit bureaus and that late payments, missed-payments, or other defaults on the Guarantor's account may be reflected in the Guarantor's credit report.

This Guaranty shall be binding upon the Guarantor and the Guarantor's personal representatives, heirs, successors and assigns.

The Guarantor represents and warrants that it has the power, authority and legal right to execute and deliver this Guaranty and to perform its obligations hereunder. The Guarantor also represents, warrants and agrees that the execution and delivery by it of this Guaranty and the performance of its obligations hereunder have been duly authorized and this Guaranty constitutes a legal, valid and binding obligation of the Guarantor enforceable against it in accordance with the terms of this Guaranty. The Guarantor agrees not to assert any defenses the Dealer may have relating to the defective formation of the Dealer, ultra vires, or other lack of authority of the Dealer, the Dealer's lack of good standing or qualification to do business in the applicable jurisdiction, or insolvency, bankruptcy or similar laws affecting creditor's rights generally.

WHEREFORE, the Guarantor has executed this Guaranty as of 04/09/2021.

**GUARANTOR:**

By: _____

Name: Yosif W. Yonis

Title: Manager